## Sampson Short, Plff. in Err., *v.* Rochester & Pittsburgh Railroad Company.

Under the act of April 29, 1874, the true measure of damages consequent to the construction of a railway is the difference between the price at which the plaintiff's land would have sold before the railway was built, and the price at which it will sell afterward. If it will sell for a greater price afterward, the plaintiff can recover nothing.

The purchaser of land through which a right of way has been granted to a railway, already located, by deed duly recorded, can recover no damages for the proximity of the railway to a sawmill which he subsequently builds

NOTE.—So a release of damages by the owner is binding upon a subsequent lessee for injury from a culvert constructed prior to the release. Hoffeditz v. Southern Pennsylvania R. & Min. Co. 129 Pa. 264, 18 Atl. 125.

on the land, or for the inconvenience in getting logs from this and an adjoining tract to the mill, caused by crossing the track.

(Argued February —, 1887.   Decided February 28, 1887.)

January Term, 1886, No. 173, E. D.   Error to the Common Pleas of Elk County to review a judgment on a verdict for the defendant in an action of trespass *quare clausum fregit.*   Affirmed.

This was an action entered by direction of the court below on appeal from the award of viewers to assess damages, under the act of April 29, 1874.

The facts, as they appeared at the trial before MAYER, P. J., were stated in his charge to the jury, which was as follows:

On the 22d day of February, 1882, and on the 30th day of March, 1882, Sampson Short, the plaintiff, purchased 1,800 acres of timber land in Spring Creek township in this county. On the 3d day of July, 1882, he purchased 23 acres adjoining the said 1,800 acres, upon which was erected a sawmill for the purpose of manufacturing into lumber the timber upon said 1,800 acres.   The timber upon said land consisted principally of hemlock, although there was some pine, beech, and maple timber upon it.

The defendant is a corporation created under the laws of this state, authorized and empowered by the terms of its charter to survey, locate, and construct a railroad between the termini named in the charter.   The said corporation was invested by the state with the right of eminent domain, which is the right to take private property for public use.   This right of eminent domain is, however, to be exercised in subordination to the provisions of the Constitution of the state, which declares:   "That municipal and other corporations invested with the privilege of taking private property for public use shall make just compensation for property taken, injured, or destroyed by the construction or enlargement of their works by way of improvements, which compensation shall be paid or secured for such damage, injury, or destruction."

Prior to the adoption of the present Constitution, corporations invested with the right of eminent domain were only liable for direct damages; but now consequential damages as well can be

recovered, where the evidence shows that such damages have been sustained.

In the location and construction of its railroad the defendant company occupied about 10 acres of plaintiff's land, running through the property a distance of some 7,320 feet; and it is to recover the damages which it is claimed have resulted from the use and occupancy by the defendant of plaintiff's land for the purpose of the railroad that this suit has been instituted. The plaintiff claims that by reason of the manner in which this railroad has been constructed through his land, its value has been depreciated for the use for which the property was adapted, having regard to the kind of property that it was, and the business which was to be carried on upon it.

The property of the plaintiff was a timber property, to be used for the purpose of cutting and sawing the timber upon it, manufacturing it into lumber, and transporting it when manufactured to some distant market. The lumber when manufactured for sale could be rafted and floated by water to Pittsburgh or taken away in the cars of the railroad company. The plaintiff claims as an item of damages in this suit that, by reason of the defendant having constructed the railroad along the bank of the creek, the plaintiff is unable to get his logs into the stream or bank them, without subjecting him to an increased expense, which some of the witnesses on the part of the plaintiff fix at from 75 cents to $1 per 1,000 feet. Another item of damages claimed by the plaintiff is the increased expense put on him in the handling, piling, and rafting of the timber at the mill, which the plaintiff's witnesses fix at the price of 50 cents per 1,000 feet.

By reason of these increased expenses attending the manufacture of the timber and its piling and rafting, the plaintiff claims that the market value of his property was affected by the construction of defendant's railroad, so that its market value since the construction of the railroad is less than it was before the railroad was constructed; and some of the witnesses called on the part of the plaintiff state that in their opinion the difference in the market value of this property between what it would have sold for before the railroad was built, and what it would have sold for after the railroad was built, was from $15,-000 to $20,000; that its value had depreciated from $15,000 to $20,000.

In estimating the damages done to property by the construction of a railroad the jury can take into consideration the advantages as well as the disadvantages which result from the construction of the railroad.    Act of April 29, 1874, § 41, P. L. 104.

[In determining the advantages or benefits which may be considered in reduction of the damages accruing, the jury must be confined to those advantages and benefits which are direct and peculiar to the owner of the land, excluding from their consideration those which he shares with other members of the community whose property is not taken; so that in ascertaining and determining whether any advantages or benefits accrued to the plaintiff, by reason of the construction of the defendant's road, those advantages must be restricted to the particular property upon which the railroad has been located.   In other words, if this timber property of the plaintiff has been benefited by the location and construction of the railroad through it, so that after the railroad was built the property would have brought a higher price in the market than before the railroad was built, this benefit can be considered by the jury, in determining what damages, if any, have been sustained by the plaintiff's property, and whether they equal or exceed the disadvantages.   And if after the jury have made a fair and just comparison of the advantages and disadvantages, they are of the opinion that the plaintiff has not sustained any injury, he cannot recover in this suit.]

But if, after a comparison of the advantages and disadvantages, the jury are satisfied that the plaintiff has sustained damages to his property, then they must determine the amount of said damages, and render a verdict accordingly.

[The plaintiff claims that by reason of the construction of the railroad upon his property he has sustained injury, from the fact that he has been subjected to increased expenditures of money in removing the timber from this property to his mills.

He claims that as the railroad company has constructed its road along the creek he has been unable after its completion to stock the logs from the timber property along the creek or bank, so that it would increase the expenditures at the rate of from 75 cents to $1 per 1,000.   He also alleges that the railroad company has constructed its road across the piling ground where the mill has been located, so that he has been subjected to increased expenses in getting the lumber to and from his mill, which ex-

pense some of the witnesses state amounts to from 25 to 50 cents per 1,000.

Now, in regard to this last.item of damages which plaintiff alleges he has suffered by reason of the difficulty of getting his timber to his mill and getting his timber from it when manufactured, the defendant claims that he is not entitled to recover anything, and that it should not be taken into account as an item of damage, for the reason that the land where the mill was built was purchased some time in the summer of 1882 after the railroad had purchased the right of way across it.

It appears from the testimony that on the 14th day of March, 1882, the Rochester & Pittsburgh Railroad Company purchased from Hyde and Hall the right of way across tract No. 5294, out of which the 23 acres were purchased by the plaintiff from Messrs. Hyde and Hall. The deed to the railroad company was recorded on the 6th day of May, 1882; the purchase by the plaintiff of Hyde and Hall of the 23 acres was not made until some time in June of 1882, for, according to the testimony of Sampson Short and Alfred Short, the purchase of this property was made about sixty days before the deed was executed and delivered, while the date of this deed is the 30th day of July, 1882. The deed to the railroad company was executed on the 14th day of March, 1882, and recorded on the 6th day of May, 1882; so that when the purchase was made by the plaintiff from Messrs. Hyde and Hall of the 23 acres of land on which the sawmill was built it appears that the deed to the railroad company was executed and delivered and put on record before the plaintiff went into possession of the 23 acres, and before the deed for the 23 acres was executed and delivered; so that if the jury believe from the evidence that this purchase of the 23 acres of land was made by Sampson Short and possession taken subsequent to the time when the deed to the railroad company was put upon record, we think this item of damages as to getting the timber to and from the mill should not be considered by the jury. If the railroad company acquired the right of way over this property and the plaintiff had notice, either actual or constructive notice, by reason of the deed of the railroad company having been put on record, he cannot afterwards come in and claim damages from the railroad company, by reason of its having located its road on this 23 acres it acquired the right of way over; and if, therefore, the jury come to the conclusion from the evidence that this purchase was

made by the railroad company, and that the railroad company had the deed put on record before Mr. Short purchased the 23 acres from Hyde and Hall, then the plaintiff should not be allowed this item of damages as claimed by him.]

In determining the question of advantages which have accrued to the property of Mr. Short, by reason of the construction of this railroad, you can take into consideration all the testimony submitted on the part of the plaintiff and defendant. A number of witnesses were called on the part of the plaintiff, who testify that in their opinion the property has been injured by the construction of the railroad; that it has depreciated in price; that it would not bring as much after the railroad was built as if it had not been built. On the other hand a large number of witnesses have been called on the part of the defendant, who state that in their opinion this property has increased in value from $10,000 to $15,000 or $20,000 by reason of the construction of the railroad, and who base their opinion upon the fact that the facilities for getting the timber off the property, and the increased value put upon the bark which is upon it, would add very materially to the market value of the property if it was put in the market. They testify that there were about $20,000 worth of bark upon the land, and that by reason of the construction of the railroad, the bark could be shipped by means of the railroad, which would add about $1 a cord to the value of the bark. On the other hand, some witnesses called on the part of the plaintiff say that in their opinion there was no increase in the value of the bark; that it could be delivered to the borough of Ridgway by other means of transportation, such as hauling with horses and wagons.

Now, all this evidence is submitted to the jury for their consideration. It will be for them to determine, under all the evidence, whether by the building of this railroad the market value of this property was increased or diminished. If you are satisfied from a fair preponderance of the evidence that, by the building of the Rochester & Pittsburgh Railroad upon the property of Mr. Short, its market value was increased, and that it was not a damage, then the plaintiff would not be entitled to recover because of the construction of the road. On the other hand, if you are satisfied that Mr. Short has been injured and damaged by the construction of this road, then he would be entitled to whatever damages, in the opinion of the jury, he has suffered.

The true measure of damages in a case of this kind is the dif-

ference in price of what the plaintiff's property would have sold for unaffected by the railroad, and what it would have sold for as affected by the construction of the railroad. If, from the evidence in the case, it would have sold for more after the construction of the railroad, then he cannot recover; if, on the other hand, it would not have sold for more, but for less, then the plaintiff would be entitled to recover the difference.

Now, take this case and determine from the evidence whether the plaintiff has suffered any damage; if he has, determine the amount of that damage, and render your verdict accordingly. If, however, after a careful consideration of the evidence, you are satisfied that the advantages exceed the disadvantages, then render a verdict for the defendant.

The defendant presented, *inter alia,* the following point:

"5. The uncontradicted evidence shows that the railroad company had acquired the right of way by deed from Hyde and others over the 23-acre mill lot, before the purchase by Short of said lot; that the railroad company had staked out its line as early as March, 1882, upon it; that the deed was recorded before the purchase by Short or any entry upon the property by Short. The purchase by Short was subservient to the right of the railroad company. Therefore, no claim for damages can be allowed to plaintiff by reason of anything growing out of the location of the mill upon the said lot, the inconvenience of getting logs to it or lumber from it."

*Ans.* As we have already stated, if Mr. Short purchased this property after the railroad company had located its line, and after it had put its deed from Mr. Hyde on record, and he erected the mill after the railroad company had acquired the right of way, the item of damage growing out of the location of the mill should not be considered by the jury, if it come to the conclusion that plaintiff is entitled to recover.

Verdict and judgment were for the defendant.

The assignments of error specified the portions of the charge inclosed in brackets and the answer to the point quoted.

*Geo. A. Rathbun. J. P. Vincent,* and *Geo. A. Allen,* for plaintiff in error.—The property of the plaintiff, as appears clearly from the evidence, is a piece of rough, mountainous timber land, and located in a strictly timbered country. For many miles in

every direction the country is a timbered country and almost valueless for anything else.   The property of the plaintiff had no value except for the timber upon it.   Now the general advantage and benefits of the railroad in all that country, and to the plaintiff's property with the rest of the community, is its general freighting and traveling advantages.   The same general benefits and advantages which accrue to the plaintiff's property in enabling him to get his lumber freighted to market accrued to the manifold other timber tracts in that neighborhood and a section of a densely timbered country.   The location of depot or side track, with reference to the convenience and benefit of this particular property, would be proper subjects of special and peculiar advantages for the consideration of the jury; but the owners of timber property, wheat property, or corn property near a railroad, and not touched by it, have all the advantages to timber, wheat, or corn, that the man has whose property is run over and taken by the construction of the road, but none of the inconveniences, danger, and other damages.

The court should have directed the jury to consider the difficulty of getting the timber to the mill, and lumber from it, as an item of damages.   The fact is a large part of the damages consists in getting the timber from the steep mountain hill side (on the lands away from the 23 acres) across the railroad track to the stream or banking ground along the same; and this item of damage exists necessarily without regard to the 23 acres or the location of the mill.

This item of damages belonged to a portion of the 1,800 acres on the southwest part thereof, and far away and entirely disconnected from the 23-acre lot; but the broad and sweeping language of the court, in saying to the jury that the difficulty in getting timber to the mill and lumber from it could not be considered, clearly included this item of damage of getting the timber from the stump to the creek which necessarily exists in any event, without regard to the location of the mill.   The ordinary danger from fire is a proper subject for the consideration of a jury in estimating the damages to a complainant's land caused by the construction of a railroad upon it.   Pittsburgh, B. & B. R. Co. v. McCloskey, 16 W. N. C. 561.

The danger from such a source to timber land is greater and more serious than to any other kind of real property.

*John G. Hall* and *C. H. McCauley,* for defendant in error.—
If it were true that all timber properties in the neighborhood
were benefited by the construction of this road, yet anything and
everything connected with the general improvement, which tends
to increase its value or usefulness to such property, may be con-
sidered.    Pittsburgh & L. E. R. Co. v. Robinson, 95 Pa. 426.

The true measure of damages is the difference in price of what
the plaintiff's property would have sold for unaffected by the
railroad, and what it would have sold for as affected by the con-
struction of the railroad.    If, from the evidence in the case, it
would have sold for more after the construction of the railroad,
then he cannot recover; if, on the other hand, it would not have
sold for more but for less, then the plaintiff would have been
entitled to recover the difference.    Schuylkill Nav. Co. v. Tho-
burn, 7 Serg. & R. 411; Schuylkill Nav. Co. v. Farr, 4 Watts
& S. 362–373; Pennsylvania R. Co. v. Heister, 8 Pa. 445–450;
Harvey v. Lackawanna & B. R. Co. 47 Pa. 428–434; East
Pennsylvania R. Co. v. Hottenstine, 47 Pa. 28–30; Danville,
H. & W. R. Co. v. Gearhart, 81* Pa. 260–263; Pittsburgh &
L. E. R. Co. v. Robinson, 95 Pa. 426–430; Pittsburgh, B. & B.
R. Co. v. McCloskey, 16 W. N. C. 561.

The owner must be paid for his property taken or injured,
either directly in money or indirectly by advantages to or the in-
creased value of what is left.    The one mode of payment is as
good as the other.    Patten v. Northern C. R. Co. 33 Pa. 426, 75
Am. Dec. 612.

Per Curiam:

This case was presented to the jury in a clear and correct
charge.    The question of advantages and injuries was properly
presented.    The points were correctly answered.

Judgment affirmed.